Allen, J.
This is a contest between creditors of an absent defendant; one party having proceeded by foreign attachment, and the other by an attachment on the same property to force an appearance in an action at law. The foreign attachment was first executed; and the only question of interest presented by the case, is, whether a creditor coming in by operation of law, after the service of the subpoena in chancery on the home defendant, is entitled to priority ?
This court has decided, in the case of M’Kim & al v. Pultons, that the endorsement by the clerk, according to the practice of the country, is sufficient to restrain the application of the effects to any other use, and is a substitute for the formal order required by the words of the statute; and that case, and the case of Williamson v. Bowie, decide, that a subpoena so endorsed, operates, from the date of its service, to inhibit any alienation by the absent debtor. According to these adjudications, the lien acquired by the service of the subpoena cannot be defeated by any act of the debtor, except in the manner prescribed by the statute; namely, the giving bond to abide by the decree. This being the law, it would seem to follow, almost as a necessary consequence, that no subsequent creditor coming in, not by the act of the party, but under the operation of law, can defeat the lien. As a general rule, the creditor is entitled to those rights only, which the debtor held. Even in the case *422 of a fraudulent deed, though it is good as between the parties, it is void as against the creditor; as to him the property remains in the debtor, as if no deed had been executed. Therefore, when it is conceded, that the debtor, by no transfer or incumbrance, can defeat the lien of the attachment; that assignees coming in under him must take subject to the rights of the attaching creditor ; if it is held, that a creditor coming in afterwards by operation of law is to be first satisfied, he will acquire rights which the debtor himself had not. If the statute is to receive such a construction, cases might, and, in practice, probably would occur, presenting strange anomalies. The attaching creditor’s lien is superior to the claim of the bona fide assignee; the right of the bona fide assignee is confessedly superior to that of a creditor whose execution has not been delivered to the sheriff before the assignment or transfer; but if the principle contended for by the appellees is law, the creditor by execution, who is subordinate to the assignee, is to be preferred to the attaching creditor, whose claim is superior to that of the assignee.
It was argued, that the lien created by the service of the attachment in chancery, results from an application of the doctrine of Us pendens: that this authorizes the court to prevent the party himself from defeating the creditor by any alienation of the subject, but does not extend to the case of a creditor coming in by act of law. The proceeding by foreign attachment is a proceeding in rem: the jurisdiction rests upon the fact, that the absent debtor has effects subject to the control of the court; and if no effects are found, the court has no authority to proceed. But when its jurisdiction once attaches, the court, according to well settled principles, may go on to do justice. If, however, the effects of the absent debtor may be taken from under its control by another creditor coming with a fi. fa., the foundation upon which its jurisdiction rested will have been swept *423 awav, and the plaintiff will be without remedy. So that, even admitting we were to look to the doctrine of lis pendens for the source of the lien of the attaching creditor, it seems to me, in a case like this of a proceeding in rem, where the jurisdiction of the court depends upon the existence of effects subject to its control, if that jurisdiction has once properly attached, it can never be ousted either by the act of the party himself or of any third person. The terms of the statute, it seems to me, will admit of no other construction: “ the court may order the debts to be paid, and effects to be delivered, to the plaintiff, upon his giving security for the return thereof, to such person and in such manner as the court shall direct.” He holds them subject to the order of the court alone. Would it be any defence in an action upon the bond given by him to return them, to say they were taken from him by a subsequent execution ? On the contrary, is it not a necessary implication from the statute, that as he is to return them in pursuance of the direction of the court, until such direction is given he must hold them? Again, it is provided, that “if the plaintiff shall refuse or not be able to give such security” (as may be required on pronouncing a final decree in his favour) “the effects shall remain under the direction of the court, in the hands of a receiver or otherwise, for so long time, and finally be disposed of in such manner, as to the court shall seem just.” The statute here speaks of the goods remaining under the direction of the court: they must then have been taken under its direction, and this by the service of the subpoena. The law also intended to protect the rights of the creditor whose poverty prevented him from giving the security required in the final decree. Time by the law is given to the absent defendant to shew cause against the decree. The effects can be held by the court until the period expires, and then, I presume, as the decree has become absolute, there could be no doubt of the propriety of applying the *424 effects to the discharge of the decree, -without requiring ' security. But under the construction contended for, it would be in the power of any creditor getting a judgment at law, to levy on these effects, and so deprive the attaching creditor of the fruit of his decree.
The argument is not reported in the case of Williamson v. Boioie; but from the opinion of the court, it would appear that it was there contended that the lien resulted from the doctrine of lis pendens. But the court, as I understand their language, overruled the proposition: “ Not deciding (it said) as a general proposition, what is to be considered, in this country, a lis pendens, binding on purchasers without actual notice, yet considering this case by analogy to attachments against absconding debtors, whose credits as well as effects may be arrested, and alienations thereof prevented” &c.
It was contended, that as there was no actual seizure, no levy on specific effects, which were thus placed under the custody of law, the property in the goods remained in the debtor, and being in him other creditors might levy on them. But granting that no actual seizure is made so as to divert the property of the debtor, the consequence deduced does not follow. The legal property of goods may remain in one, subject to the equitable lien of another; and third persons coming in under the first, must occupy his position and hold subject to the lien. For many purposes the property of the goods may rest in the debtor, notwithstanding the service of the attachment. Thus, in several attachments against the same absconding debtor, the attachments are levied successively on the same goods as his property, and they are paid according to the dates of their respective levies. So with executions. And in the case of foreign attachment, where the real estate is proceeded against, there is no seizure, no divesting of title, and from the nature of the subject cannot be.
*425 But, in truth, I look upon the service of the attach-merit as -equivalent to an actual levy. The effects may remain in the hands of the garnishee, but under the control of the court: he acquires a special property in them as agent of the court: and this property is sufficient to protect him against the claims of the owner : it is his duty so to protect himself; and upon his failure, a personal decree will go against him. The property of the goods is so far divested as to prevent a recovery by the party. And this distinguishes the case from Payne v. Drewe, which has been so much pressed on the court. There, a writ of sequestration had been issued out of chancery, which was held up by the sequestrators some eighteen months. In the mean time, a fi. fa. came to the hands of the sheriff, who seized the goods and made an inventory of them, but afterwards quitted possession and returned nulla bona; and the writ of sequestration was relied on as a protection against the suit of the creditor for a false return. Lord Ellenborough, without deciding what was the effect of a writ of sequestration, but conceding that it had the same obligatory effect as the award of an execution at common law, which binds from the teste of the writ, proceeded to enquire into the extent to which goods are bound by the award of the writ; and held, that it did not so vest the property in the goods absolutely, as to defeat a sale made by the sheriff under an execution; that the property of the goods was not altered, but continued in the defendant till execution executed. And this, it seems to me, is very clear from this consideration, that if no levy is made before the return day, the goods cease to be bound, and an alienation made whilst the writ was in force, could not be overreached by a levy on a subsequent writ. The writ, when executed, related at common law to the time of tlie teste, and now to the time of the delivery, so as to overreach intermediate alienations. Having decided that the sheriff could have levied, and made a valid sale, *426 notwithstanding the writ of sequestration in the hands of the sequestrators, he proceeded to shew, that, under the special circumstances of that case, the sheriff would not have been liable to the action of the party grieved. If, however, I am right in supposing that a foreign attachment is tantamount to an actual levy, that it places the effects under the control of the court, and so far vests the property in the garnishee or agent of the court, as to defeat all claims or transfers of the defendant,— the case stands upon wholly different grounds. So, in the case of two writs of fi. fa. the sheriff is bound to execute the writ first delivered, but if he do otherwise and execute and sell under the second, the property of the goods is bound by the sale. The remedy of the creditor in the first execution, is against the sheriff. And this for reasons of public policy: “ for sales made by the sheriff ought not to be defeated, for if they are, no man will buy goods levied upon an execution.” Smalcombe v. Cross, 1 Ld. Raym. 252.
The analogy derived from the case of Foreman v. Loyd wholly fails. That case, as appears by the language of all the judges, depended entirely upon the construction of the 10th section of the statute concerning executions. The mischief there intended to be remedied, was the alienation by debtors in execution to defeat the claim of the creditor. The first clause of the section was held to be limited to sales by the debtor himself, excluding involuntary judgments; and the words of the second clause, providing that a ca. sa. executed shall bind the real estate from the levy, were merely intended to effectuate the intention of the first clause.
On the facts in this case, I think the proceeding by way of foreign attachment was fully warranted; and that the application to the court to injoin the sale under the order of sale in Hamilton f Cost’s action at law, was regular, and indeed the only remedy the plaintiffs in the foreign attachment could resort to.
*427 I think, therefore, the court below erred in dissolving the injunction. It should have continued the injunction until the case of foreign attachment was disposed of, and then have perpetuated it, in whole or in part, or dissolved it, as the result of that case should shew to he proper; giving to the appellants, the plaintiffs in the foreign attachment, priority of satisfaction if they should succeed in establishing their claim.
The other judges concurred. Decree reversed, and cause remanded &c.